# COURT OF APPEALS OF VIRGINIA

---

**Record No. 0349-25-2**

---

WILSON MECHANICAL SERVICE, LLC
v.
MICHAEL W. MORLEY, ET AL.

Present: Judges Causey, Chaney and White

Argued by videoconference

Opinion Issued July 7, 2026[*]

---

**FROM THE CIRCUIT COURT OF HANOVER COUNTY**
Victoria A.B. Willis, Judge

Henry I. Willett, III (Christian & Barton, LLP, on briefs), for appellant.

Bradley P. Marrs (Marrs & Henry, on briefs), for appellee Michael Morley.

No brief or argument for appellee Catherine M. Trimmer, Executrix of the Estate of Frank Lloyd Trimmer, Deceased.

---

**MEMORANDUM OPINION BY**
**JUDGE VERNIDA R. CHANEY**

Wilson Mechanical Service, LLC appeals the circuit court's order confirming an

arbitration award entered in favor of Michael W. Morley and Catherine M. Trimmer, executrix

of the Estate of Frank Lloyd Trimmer. Wilson Mechanical primarily challenges the court's

decision to reconsider its earlier letter opinion, reject Wilson Mechanical's request to vacate the

arbitration award, confirm the award, and award costs and prejudgment interest.[1] Wilson

Mechanical specifically contends that the arbitrator committed "misconduct prejudicing [its]

rights" and "exceeded [his] powers" under the Virginia Uniform Arbitration Act ("VUAA"),

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Wilson Mechanical assigned twelve errors to the circuit court's rulings.

Code § 8.01-581.010(2), (3).  Morley assigns two cross-errors, preliminarily designated by Morley and Trimmer, concerning the court's refusal to enforce the separate January 2024 Arbitration Agreement.

We affirm the circuit court's confirmation of the arbitration award.  "[W]e strive to decide cases on the 'best and narrowest grounds[.]'"  *Wallace v. MJM Golf, LLC*, 86 Va. App. 663, 674 (2026) (alterations in original) (quoting *Alexandria Redevelopment & Hous. Auth. v. Walker*, 290 Va. 150, 156 (2015)).  The "best" ground is that agreed to by the largest number of jurists, and the "narrowest" ground is that which affects the fewest cases.  *Id.* (citing *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020)).  Applying those principles, Wilson Mechanical's failure to establish a statutory ground for vacatur provides the best and narrowest ground for resolving the appeal.

Thus, we assume without deciding that the Engagement Letter governed the arbitrator's duties.  Under that assumption, Wilson Mechanical retained the right to seek vacatur under Code § 8.01-581.010.  Even so, Wilson Mechanical failed to carry its burden to prove misconduct prejudicing its rights or an egregious departure from the powers conferred on the arbitrator.  Since the award can be confirmed under the VUAA even under Wilson Mechanical's view of the controlling agreement, we need not address Morley and Trimmer's cross-errors.[2]  We affirm the costs award but remand for the limited purpose of allowing the circuit court to consider its award of prejudgment interest.

---

[2] Morley assigns cross-error, which Morley and Trimmer preliminarily designated, to the circuit court's refusal to enforce the separate January 2024 Arbitration Agreement, which they contend waived Wilson Mechanical's statutory challenges to the arbitration award and authorized attorney fees.  Since Wilson Mechanical's challenge fails even assuming that the Arbitration Agreement is unenforceable against Wilson Mechanical, the cross-errors are unnecessary to our disposition.  We therefore do not reach them.

BACKGROUND

## I.  The Partnership Dispute

This case arises from the dissolution and winding up of Wilson Mechanical Service, LLC—Service Division, a partnership among Morley, Frank Lloyd Trimmer, and Wilson Mechanical.  Morley owned a 60% interest in the partnership, while Trimmer and Wilson Mechanical each owned 20%.  After Trimmer died, his widow, Catherine M. Trimmer, became executrix of his estate.

Morley filed this action in July 2022, seeking dissolution, an accounting, and winding up of the partnership.  The parties primarily disputed whether expenses attributable to Morley were personal or business; Wilson Mechanical maintained they were personal expenses, while Morley characterized them as business.

The case was scheduled for a three-day trial in December 2023.  Before trial, however, the parties agreed to stay the circuit court proceedings and submit their accounting dispute to a CPA, Barry I. Strickland, for a binding determination.[3]  The Engagement Letter confirmed that Strickland would determine, "solely from information furnished by the partners through counsel," each partner's capital account for purposes of distributing the $160,485.06 held in escrow by Morley's counsel.  R. 284.  The letter also authorized Strickland to determine whether any partner owed additional partnership-derived funds to another.

## II.  The Engagement Letter and Arbitration Process

In January 2024, the parties negotiated a proposed Arbitration Agreement.  Morley and Trimmer executed the proposed agreement, but Wilson Mechanical did not sign it.  The proposed Arbitration Agreement included a waiver of challenges to the CPA's decision under Code § 8.01-581.010 and a fee-shifting provision.  The circuit court later found that because Wilson

---

[3] The circuit court entered the stay order on November 28, 2023.

Mechanical had not signed the proposed agreement, its provisions could not be enforced against it.

The parties executed an Engagement Letter with Barry Strickland & Company ("BS&Co"). The Engagement Letter confirmed that "Barry I. Strickland, CPA" would serve as arbitrator and that the agreement was "retroactive to November 2023 when Strickland began to render services under this agreement in good faith." R. 284. The Engagement Letter provided that Strickland would determine, "solely from the information furnished by the partners through their counsel," each partner's capital account for the purpose of distributing the escrowed funds and determining whether any partner owed additional funds to another. R. 284.

The Engagement Letter described the process as follows:

> 1. Strickland will review information already received from Michael Morley and Wilson Mechanical Service, LLC through their respective counsels, as well as any additional information requested by BS&Co and provided by the parties, and prepare questions for the Parties to address.
>
> 2. The parties will respond to Strickland's questions within one week.
>
> 3. Strickland will provide a preliminary analysis.
>
> 4. The parties will have one week to provide any additional information for Strickland to consider.
>
> 5. Strickland will render a final decision.

R. 285.

The Engagement Letter also contained several limiting provisions. It stated that "[t]he Parties understand that this will be a difficult and imperfect determination due to the lack of presently available accounting records." R. 285. It provided that BS&Co would "apply its best judgment, and apply sound accounting principles where possible, in providing a final outcome for the Parties." R. 285. The parties agreed to work with BS&Co to provide "any and all

accessible accounting records to assist BS&Co in the process." R. 285. However, the Engagement Letter added that BS&Co and Strickland were "not providing any services that could be construed as an audit, review, or compilation of the Partnerships' accounting records," would "offer no assurances as to the accuracy or completeness of those records or other information furnished by Parties' counsel," and were not undertaking to uncover fraud, error, or wrongdoing. R. 285.

On January 23, 2024, Wilson Mechanical transmitted the executed Engagement Letter to Strickland. Within two hours, Strickland issued his preliminary analysis. Wilson Mechanical objected, arguing that Strickland had issued the analysis before reviewing paper records located at Wilson Mechanical, accessing QuickBooks data, and engaging in the full question-and-answer process outlined in the Engagement Letter. Strickland later issued his final award on February 14, 2024.

### III. The Circuit Court's Letter Opinions

Morley moved the circuit court to confirm Strickland's final arbitration award under Code § 8.01-581.09. Wilson Mechanical opposed confirmation and petitioned to vacate the award under Code § 8.01-581.010, arguing again that Strickland committed misconduct prejudicing its rights and exceeded his powers.

The circuit court conducted an evidentiary hearing on September 3, 2024. The court heard testimony from Strickland and Morley's counsel. In a September 11, 2024 letter opinion, the circuit court stated that it would vacate the award under Code § 8.01-581.010(2), (3). The court reasoned that the proposed Arbitration Agreement was not enforceable against Wilson Mechanical because it had not signed the agreement. R. 601. The court then found that two statutory grounds supported vacatur: "misconduct prejudicing the rights of any party and/or an arbitrator exceeding powers." R. 601.

- 5 -

The circuit court focused on several circumstances in the September 11 letter opinion. It noted that Strickland released his preliminary analysis "[w]ithin two hours of receiving Wilson's executed Engagement Letter." R. 601. The court found that Strickland did not attempt to review documents located at Wilson Mechanical's place of business. R. 602. The court also found that Strickland's "balls and strikes" methodology without further explanation, conflicted with the Engagement Letter's requirement that he apply his best judgment and sound accounting principles where possible. R. 602. The court stated that "sound accounting principles" would require "some sort of explanation for different treatment of same or similar entries." R. 602. It concluded that "[a]t best," Strickland failed to uphold the standard set in the Engagement Letter and that "such misconduct was prejudicial to Wilson." R. 602. The court also determined that Strickland exceeded his powers with respect to his allocation of excess fees. R. 602-03.

No order was entered on the September 11 letter opinion. Morley moved for reconsideration. In a January 23, 2025 letter opinion, the circuit court reversed its earlier ruling. The court again found that all parties had not executed the separate Arbitration Agreement and that it could not be enforced against Wilson Mechanical as a non-signatory. The court found, however, that the parties had agreed to arbitration and had participated in the process.

On reconsideration, the circuit court concluded that Wilson Mechanical had failed to establish sufficient cause to vacate the award under Code § 8.01-581.010. As the court observed, Wilson Mechanical had not presented expert testimony establishing that Strickland failed to use proper accounting standards and that the court could not make that determination independently.[4]

---

[4] Wilson Mechanical, at oral argument, argued that no expert testimony was required because the relevant question was whether Strickland followed the Engagement Letter, not whether his accounting conclusions were correct.

We do not foreclose the possibility that, on a different record, a court could determine whether an accounting arbitrator fulfilled a contractual process standard without the need for expert testimony. The issue here is a matter of proof: Wilson Mechanical did not present any

R. 631.  The court also concluded that Strickland had no contractual duty to seek out documents, relying on the Engagement Letter's language providing that he would determine the capital accounts "solely from information furnished by the partners through their counsel."  R. 631.  The court added that "the lack of any evidence refuting the determinations is undeniable" and that its earlier finding concerning excess fees did not establish that Strickland "exceeded" his powers under Code § 8.01-581.010(3).  R. 631.  The court confirmed the arbitration award and entered final judgment.

ANALYSIS

I.  Wilson Mechanical's Failure to Establish a Ground for Vacatur

Wilson Mechanical argues that the circuit court erred in confirming the arbitration award because Strickland committed misconduct that prejudiced its rights and exceeded his powers. Wilson Mechanical maintains that the Engagement Letter required Strickland to review paper records located at its office, attempt to access its QuickBooks data, conduct a full question-and-answer process, and apply sound accounting principles.  Wilson Mechanical contends that Strickland's failure to fulfill those requirements mandated vacatur under Code § 8.01-581.010(2), (3).  On this record, however, Wilson Mechanical failed to carry its evidentiary burden of establishing either statutory ground to vacate the award.

A.  *The VUAA provides narrow and exclusive grounds for vacatur.*

Code § 8.01-581.010 provides that "[u]pon application of a party, the court shall vacate an [arbitration] award" if one of the statutory grounds is established.  The statute lists five exclusive grounds for vacatur, including where "[t]here was evident partiality by an arbitrator appointed as a neutral, corruption in any of the arbitrators, or misconduct prejudicing the rights

_____

evidence that Strickland's conduct constituted misconduct prejudicing its rights or represented an egregious departure from his powers under the Engagement Letter.

- 7 -

of any party." Code § 8.01-581.010(2). Subdivision (3) mandates vacatur where "[t]he arbitrators exceeded their powers." Code § 8.01-581.010(3). The statute also provides that "[i]f the application to vacate is denied and no motion to modify or correct the award is pending, the court shall confirm the award." Code § 8.01-581.010.

"Because the VUAA defines the parameters of judicial review of arbitration awards, 'a circuit court's denial of an application to vacate an arbitration award under the [VUAA] presents a question of statutory interpretation, which we review de novo.'" *Garofalo v. Di Vincenzo*, ___ Va. ___, ___ (Feb. 26, 2026) (quoting *Meuse v. Henry*, 296 Va. 164, 180 (2018)). However, the scope of judicial review is exceedingly narrow. "Virginia public policy, as reflected in the VUAA, favors arbitration and the validity of agreements to arbitrate." *Id.* (citing *TM Delmarva Power, LLC v. NCP of Va., LLC*, 263 Va. 116, 122-23 (2002)). For that reason, judicial review of an arbitration award under the VUAA is "among the narrowest known to the law." *Cotton Creek Circles, LLC v. San Luis Valley Water Co.*, 279 Va. 320, 325 (2010) (quoting *Long John Silver's Rests. Inc. v. Cole*, 514 F.3d 345, 349 (4th Cir. 2008)). "[T]he party attacking an arbitrator's award bears the burden of proving the invalidity of the award." *Meuse*, 296 Va. at 180 (alteration in original) (quoting *Bates v. McQueen*, 270 Va. 95, 100 (2005)).

Courts do not vacate arbitration awards merely because the arbitrator may have committed factual or legal error. *BBF, Inc. v. Alstom Power, Inc.*, 274 Va. 326, 330 (2007). "In determining whether arbitrators exceeded their [powers], pursuant to Code § 8.01-581.010(3), the issue we decide is not whether the award is legally correct. We decide only whether the arbitrators had the power to decide the parties' contract claims." *Id.*

The Supreme Court's recent decision in *Garofalo* reinforces this approach. *Garofalo*, ___ Va. at ___. There, the Court construed the phrase "evident partiality" in Code § 8.01-581.010(2). *Id.* at ___. In doing so, the Court began with the statute's plain language,

- 8 -

considered the surrounding statutory terms, and emphasized that vacatur is a rare remedy under the VUAA. *Id.* at ___. Relying on the General Assembly's policy favoring arbitration agreements and their validity, the Supreme Court recognized that "vacating an arbitration award is a legal remedy justified only by *rare* circumstances." *Id.* at ___ (emphasis added). Applying noscitur a sociis, the Supreme Court explained that subdivision (2) groups "evident partiality" with "corruption" and "misconduct prejudicing the rights of any party," terms that suggest serious arbitrator misconduct threatening the fairness of the arbitration. *Id.* at ___ (quoting *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 432 (2012) ("The maxim of *noscitur a sociis* provides that the meaning of doubtful words in a statute may be determined by reference to their association with related words and phrases.").

B. *Wilson Mechanical failed to prove misconduct under Code § 8.01-581.010(2).*

Code § 8.01-581.010(2) permits vacatur when there was "misconduct prejudicing the rights of any party." Wilson Mechanical argues that Strickland committed misconduct by issuing his preliminary analysis too quickly, failing to review records located at its office, failing to access QuickBooks, failing to conduct the full question-and-answer process, and failing to explain his treatment of certain expenses. However, Wilson Mechanical did not establish that the alleged defects constituted statutory misconduct prejudicing its rights.

In determining whether Wilson Mechanical established "misconduct prejudicing the rights of any party," we begin with the statutory text. "[A] court's interpretation of a statute is a pure question of law, reviewed de novo." *Wallace*, 86 Va. App. at 675. "[W]hen interpreting a[] . . . [statute], 'our primary objective is to "ascertain and give effect to legislative intent," as expressed by the language used.'" *Corzine v. Alexandria City Council*, 86 Va. App. 623, 630 (2026) (third alteration in original) (quoting *Berry v. Bd. of Supervisors*, 302 Va. 114, 127 (2023)). "As with all issues of statutory interpretation, we are bound by the plain language of the

statutes at issue." *Wallace*, 86 Va. App. at 676 (quoting *Small v. Fannie Mae*, 286 Va. 119, 127 (2013)). "[Courts] often consult general-purpose dictionaries to determine a statute's plain meaning." *Garofalo*, ___ Va. at ___.

The VUAA does not define "misconduct." Although "misconduct," under ordinary usage, broadly means "intentional wrongdoing," that term does not appear in isolation within the VUAA. *See, e.g.*, *Adidas Am., Inc. v. Browne*, 174 F.4th 325, 332-33 (2d Cir. 2026) ("misconduct" is "a dereliction of duty; unlawful, dishonest, or improper behavior, esp. by someone in a position of authority or trust" (quoting *Misconduct*, *Black's Law Dictionary* (12th ed. 2024))); *3484, Inc. v. NLRB*, 137 F.4th 1093, 1112 (10th Cir. 2025) ("misconduct" is an "intentional wrongdoing" and "deliberate violation of a rule of law or standard of behavior" (quoting *Webster's Third New Int'l Dictionary* at 1443 (2002))).

"Misconduct" appears in subdivision (2) alongside "evident partiality" and "corruption." Code § 8.01-581.010(2). In *Garofalo*, applying noscitur a sociis to Code § 8.01-581.010(2), the Supreme Court explained that the provision "contains other drastic, brazen conduct by arbitrators," including fraud and corruption, and that "[m]ore than mere procedural irregularities," the grounds for vacatur suggest "severe misconduct by an arbitrator that would be apparent to a reviewing court." *Garofalo*, ___ Va. at ___.

Subdivision (4) reinforces that distinction. That provision separately addresses an arbitrator's refusal to postpone a hearing, refusal to hear material evidence, or conduct of the hearing "in such a way as to substantially prejudice the rights of a party." Code § 8.01-581.010(4). Reading subdivisions (2) and (4) together, "misconduct prejudicing the rights of any party" requires more than claimed procedural imperfections, dissatisfaction with the arbitrator's reasoning, or disagreement with the arbitrator's treatment of evidence. The party seeking vacatur must prove both misconduct and prejudice.

- 10 -

Wilson Mechanical did not make that showing.  The Engagement Letter, read as a whole, stated that Strickland would review information already received from the parties through counsel, review additional information requested by BS&Co and provided by the parties, and prepare questions for the parties to address.  It added that the parties would respond to Strickland's questions, that he would provide a preliminary analysis, that the parties would have one week to provide more information, and that he would then render a final decision.

However, the letter also limited Strickland's role.  It stated he would make his determination "solely from information furnished by the partners through their counsel."  R. 284.  The letter also advised the parties that the determination would be "difficult and imperfect" given the lack of available accounting records.  R. 284-85.  The letter required Strickland to apply sound accounting principles only "where possible."  R. 285.  And it expressly provided that neither BS&Co nor Strickland was performing an "audit, review, or compilation" of the partnership's accounting records or offering any assurance as to the "accuracy or completeness" of the records or information furnished by counsel.  R. 285.

Wilson Mechanical treats the Engagement Letter as requiring a more searching accounting review than the letter itself contemplated.  However, the parties did not hire Strickland to conduct an audit, reconstruct the partnership's books, uncover fraud, or assure the completeness of records.  They agreed that Strickland would "apply his best judgment and apply sound accounting principles where possible, in providing a final outcome for the [p]arties" despite incomplete records.  R. 285.

Although Strickland issued his preliminary analysis in less than two hours of receiving Wilson Mechanical's executed Engagement Letter, timing alone does not prove misconduct.  The letter stated that it was "retroactive to November 2023, when Strickland began to render services under this agreement in good faith."  R. 284.  At the September 3, 2024 hearing, the

parties discussed an email suggesting that Strickland had started working in good faith before all signatures were received. R. 907, 935. Thus, the short interval between Wilson Mechanical's signature and the preliminary analysis did not itself establish intentional wrongdoing, severe arbitrator misconduct, or prejudice. Furthermore, the record indicates that the characterization of certain expenses as "balls and strikes"—a term used by Strickland to describe his approach without further elaboration—was made in the context of the final award's response to Wilson Mechanical's objections to the preliminary analysis. Wilson Mechanical had the opportunity to provide additional information that Strickland considered in his modifications to the final award. The relevant consideration under Code § 8.01-581.010(2) is whether the final award reflects statutory misconduct, rather than merely whether the preliminary analysis was issued promptly or its initial reasoning was cursory.

Wilson Mechanical also did not prove that Strickland had a contractual duty to conduct an independent inspection of paper records at Wilson Mechanical or to obtain access to QuickBooks before issuing an award. The Engagement Letter stated that Strickland would determine the partners' capital accounts "solely from information furnished by the partners through their counsel." R. 284, 631. The letter allowed Strickland to consider additional information requested by BS&Co and provided by the parties, but it did not require him to act as an investigator or auditor. R. 285. The record indicates that the issue of accessing QuickBooks was addressed; however, difficulties arose in obtaining access to the digital records due to the parties' inability to open the QuickBooks file, access the relevant email account required for password recovery, and the expiration of the QuickBooks subscription. R. 906, 981-84. Even so, the Engagement Letter did not make access to QuickBooks a condition precedent to the award. Instead, the letter anticipated incomplete records and an imperfect determination. R. 285.

Wilson Mechanical also failed to carry its burden of proving that the absence of a formal question-and-answer process supported vacatur on this record. Even assuming that Strickland's questions were less extensive than Wilson Mechanical expected, the record does not show that any defect in that process prejudiced Wilson Mechanical's rights. Wilson Mechanical objected to the preliminary analysis and submitted additional information. The court's September 11 letter opinion found that Wilson Mechanical "responded to the preliminary analysis with sufficient information such that Strickland made modifications to the final analysis." R. 602. On reconsideration, the court noted "the lack of any evidence refuting the [final] determinations." R. 631. Wilson Mechanical did not identify additional information that a more formal question-and-answer process would have produced, nor did it establish that such information would have changed the final award. It also did not show that the manner in which the question-and-answer process occurred deprived it of a fair hearing or prejudiced its rights within the meaning of Code § 8.01-581.010(2).

The record does not support Wilson Mechanical's assertion of prejudice. Following Wilson Mechanical's submission of objections to the preliminary analysis, Strickland made modifications in its favor in the final award. Additionally, the claimed inaccessibility of the QuickBooks data—highlighted by Wilson Mechanical as a reason to vacate the award—was not solely due to Strickland's actions. The record indicates that the parties were unable to open the QuickBooks file, access the email account needed to reset the password, and that Wilson Mechanical's QuickBooks subscription had expired. R. 906, 981-84. A party alleging prejudice from an arbitrator's failure to access certain records cannot establish that prejudice where the inaccessibility of those records was not attributable solely to the arbitrator.

Finally, Wilson Mechanical did not prove that Strickland's expense classifications mandated vacatur. Wilson Mechanical emphasizes that the circuit court initially believed "sound

accounting principles" would require an explanation for the different treatment of similar entries. However, the statutory question is not whether the court would have wanted more explanation or whether the award contains accounting judgments that could be debated. The question is whether Wilson Mechanical proved misconduct prejudicing its rights. The circuit court concluded that Wilson Mechanical had not done so. The circuit court observed that Wilson Mechanical had not presented evidence that Strickland failed to use proper accounting standards and that the court could not independently make that technical determination. The court noted "the lack of any evidence refuting the determination." R. 631.

Wilson Mechanical's position would require us to scrutinize the arbitrator's accounting judgments, infer from perceived inconsistencies that no permissible accounting principles were applied, and vacate the award because the court may have expected a more detailed explanation. In this case, Wilson Mechanical failed to produce any evidence—expert or otherwise—demonstrating that Strickland's methodology violated the Engagement Letter, that sound accounting principles required a different result given the incomplete records available, or that any deviation from the process prejudiced Wilson Mechanical's rights under Code § 8.01-581.010(2). The arguments made by counsel and the language of the Engagement Letter alone do not meet this burden. The circuit court's observation on reconsideration that Wilson Mechanical had not presented expert testimony on accounting standards was merely an acknowledgment of the lack of evidentiary support. Expert testimony is not categorically required in every case; the essential point is that Wilson Mechanical bore the burden of establishing a statutory basis for vacatur and failed to do so.

C. *Wilson Mechanical failed to prove that Strickland exceeded his powers under Code § 8.01-581.010(3).*

Code § 8.01-581.010(3) requires vacatur where "the arbitrators exceeded their powers." "Arbitrators derive their [powers] solely from the parties' contractual agreement to arbitrate disputes arising under the contract. Thus, arbitrators exceed the scope of their [powers] when they purport to act beyond the terms of the contract from which they draw their [powers.]" *Trs. of Asbury United Methodist Church v. Taylor & Parrish, Inc.*, 249 Va. 144, 153 (1995) (citations omitted). However, the exceeded-powers ground remains narrow as courts do not decide whether the award was factually or legally correct. *BBF*, 274 Va. at 330. Rather, courts ask whether the arbitrator had the power to decide the submitted claims. *Id.* An arbitrator exceeds his powers only when he "egregiously depart[s] from" the powers conferred by the parties. *Cotton Creek Circles*, 279 Va. at 325.

Here, the parties asked Strickland to determine each partner's capital account, how the $160,485.06 in escrow should be disbursed, and whether any partner should have to pay additional funds to another. That is the precise dispute Strickland decided in his final award. Wilson Mechanical does not argue that the capital-account dispute was outside the scope of the arbitration. Instead, Wilson Mechanical challenges how Strickland performed the task: what records he received, how quickly he issued the preliminary analysis, how many questions he asked, and how he categorized expenses. Those objections challenge the manner in which Strickland exercised his powers, not whether he had power to decide the dispute at issue.

Even accepting those arguments as true does not establish an "egregious depart[ure]" from his powers. The Engagement Letter expressly authorized Strickland to decide the capital account and distribution dispute from information furnished through counsel. It recognized that the determination would be difficult and imperfect. The letter authorized Strickland to apply his "best judgment" and "sound accounting principles where possible." The fact that Wilson

- 15 -

Mechanical disagrees with Strickland's methodology does not show that Strickland decided an issue the parties did not submit to him or acted outside the powers conferred.

Wilson Mechanical relies on the circuit court's concern in its first letter opinion that Strickland's "balls and strikes" explanation conflicted with the "sound accounting principles" standard outlined in the Engagement Letter. However, Strickland's "balls and strikes" explanation, viewed in context, does not establish that he strayed from his powers or decided a different dispute. The Engagement Letter required a judgment and final decision. It did not impose a rigid accounting formula, require Generally Accepted Accounting Principles (GAAP), or require an audit. In fact, during negotiations, Wilson Mechanical proposed that Strickland apply "GAAP, generally accepted accounting principles," but Morley refused to agree to that standard. Notably, the letter expressly required Strickland to apply his "best judgment" and sound accounting principles only "where possible," both of which signal a range of discretion. Wilson Mechanical thus failed to prove that Strickland's exercise of judgment under that imperfect record constituted an egregious departure from his contractual powers.[5]

Since Strickland decided the dispute that the parties submitted to him, and because Wilson Mechanical did not prove that he egregiously departed from the powers conferred by the Engagement Letter, the circuit court did not err in rejecting vacatur under Code § 8.01-581.010(3).

---

[5] The circuit court first found that Strickland exceeded his powers with respect to the payment of excess fees. On reconsideration, however, the court concluded that its earlier finding was "not correct under the statutory definition." The Engagement Letter addressed payment of BS&Co's fees and costs and provided that amounts exceeding the retainer would be paid from the funds held by Morley's counsel. Even if the award's treatment of fees could be questioned, Wilson Mechanical has not shown that any such issue required vacatur of the capital account award under Code § 8.01-581.010(3).

- 16 -

## II. Reconsideration of the September 11 Letter Opinion

Wilson Mechanical also argues that the circuit court abused its discretion by granting reconsideration. It emphasizes that Morley presented no new evidence and no change in law after the September 11 letter opinion. However, no order had been entered on the September 11 letter opinion. The court thus retained jurisdiction to reconsider its ruling before entering a final order. *See* Rule 1:1(a) ("All final judgments, orders, and decrees . . . remain under the control of the trial court may be modified or suspended for twenty-one days *after the date of entry*, and no longer." (emphasis added)).

A circuit court's decision to reconsider an earlier ruling is reviewed for abuse of discretion. *See Winston v. Commonwealth*, 268 Va. 564, 620 (2004). "[A] trial court may always, in its discretion, decide to reconsider a ruling." *Hechler Chevrolet Inc. v. Gen. Motors Corp.*, 230 Va. 396, 403 (1985). "A court has abused its discretion if its decision was affected by an error of law or was one with which no reasonable jurist could agree." *R.T. v. Commonwealth*, 86 Va. App. 293, 299-300 (2025) (quoting *Tomlin v. Commonwealth*, 74 Va. App. 392, 409 (2022)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Id.* at 300 (quoting *Hicks v. Commonwealth*, 71 Va. App. 255, 270 (2019)).

The January 23 letter opinion indicates that the circuit court, exercising its discretion, corrected its legal analysis before issuing a final order—without reversing its factual findings. The court's factual observations remained unchanged: Strickland prepared his preliminary analysis in less than two hours of receiving Wilson Mechanical's signed Engagement Letter; he did not independently seek physical records at Wilson Mechanical's offices; and his "balls and strikes" rationale for treating similar entries differently was, in the circuit court's view, less than what "sound accounting principles" would ideally require. The court's reconsideration focused

- 17 -

on the legal conclusion derived from these facts—specifically, whether, under the VUAA's narrow review standard and considering Wilson Mechanical's burden of proof, the circumstances constituted statutory misconduct prejudicing Wilson Mechanical under Code § 8.01-581.010(2) or an egregious departure from Strickland's powers under Code § 8.01-581.010(3). The court determined that it had applied the incorrect legal standard to the same factual findings and corrected this error before finalizing the order. This kind of legal self-correction by a circuit court is both permitted and appropriate before a final judgment is issued. *See* Rule 1:1(a).

Wilson Mechanical argues that reconsideration was improper because Morley presented no new evidence, no change in law, and no clear error on the face of the record. *Hechler Chevrolet* holds that reconsideration motions are generally disfavored. *See* 230 Va. at 403. Relief ordinarily requires "point[ing] out some error on the face of the record." *Thomas v. Commonwealth*, 62 Va. App. 104, 109 (2013) (quoting *Downing v. Huston, Darbee Co.*, 149 Va. 1, 9 (1927)). Here, however, Morley's motion identified a specific legal error: the circuit court had applied an incorrect standard for vacatur under the VUAA and had failed to require Wilson Mechanical to satisfy its statutory burden of proof. The circuit court agreed that it had committed precisely that error. Granting reconsideration to correct a legal error in the application of a statute—before any order has been entered—falls comfortably within the circuit court's discretion and does not constitute an abuse of it.

Since the court's final ruling correctly applied the narrow review mandated by the VUAA and required Wilson Mechanical to demonstrate a statutory basis for vacatur, we affirm the circuit court's decision to reconsider and confirm the award.

### III.  Limited Remand for Prejudgment Interest

Wilson Mechanical also challenges the circuit court's award of costs and prejudgment interest. It argues that Morley did not present evidence supporting the costs award and that

prejudgment interest was not argued at the September 3, 2024 hearing or addressed in either letter opinion. Morley responds that the $110 in costs was verified in the court file and that prejudgment interest properly ran from the date of the final arbitration award because that is when the amount owed became fixed.

An award of costs and prejudgment interest is generally reviewed for abuse of discretion. *City of Charlottesville v. Regulus Books, LLC*, 301 Va. 170, 179 (2022). However, meaningful abuse-of-discretion review requires a record showing that the circuit court exercised discretion. "Indeed, 'an appellate court is not without recourse in the event it finds itself unable to exercise informed judicial review because of an inadequate [circuit court] record. In such a situation, an appellate court may always remand a case to the [circuit court] for further consideration.'" *Wolfe v. Jiang*, 83 Va. App. 107, 117 n.2 (2026) (quoting *Jones v. Willard*, 224 Va. 602, 607 (1983)).

The award of costs of $110 is authorized by statute and verifiable from the clerk's record. Code § 8.01-581.012 provides that "[c]osts of the application and of the proceedings subsequent thereto, and disbursements may be awarded by the court." Wilson Mechanical does not dispute the amount; it contends only that no evidence was presented at the hearing. Since Code § 8.01-581.012 authorizes the award and the record supports the $110 cost amount, we affirm the costs award.

The prejudgment interest award presents a different question. Neither letter opinion addressed whether prejudgment interest was legally available, identified the basis for the award, or stated the date from which interest accrued. The court's final order awarded prejudgment interest without analysis. Without that analysis, we cannot determine whether the circuit court considered the parties' competing positions, including whether the arbitration award constituted a liquidated sum from which interest could run, or exercised its discretion on the issue. We therefore remand for the limited purpose of allowing the circuit court to consider its award of

prejudgment interest.  On remand, the circuit court should address the legal availability of prejudgment interest and the date from which it accrues.[6]

CONCLUSION

The Virginia Uniform Arbitration Act requires confirmation of an arbitration award unless the party seeking vacatur proves one of the limited statutory grounds for setting the award aside under Code § 8.01-581.010.  On this record, Wilson Mechanical failed to carry its burden. The record does not establish that Strickland committed misconduct prejudicing Wilson Mechanical's rights or that he exceeded the powers conferred by the Engagement Letter.  The circuit court thus did not err in reconsidering its earlier letter opinion to correct its legal conclusions and confirm the award.

Accordingly, we affirm the circuit court's order confirming the arbitration award and its award of costs, and remand only for the limited purpose of allowing the circuit court to consider its award of prejudgment interest.

*Affirmed in part and remanded in part.*

---

[6] We express no opinion on whether prejudgment interest should be awarded.